1

2

3

4

5

6                         IN THE UNITED STATES DISTRICT COURT

7                          FOR THE DISTRICT OF ARIZONA

8

9   Kee Nelson Steah, Sr.,                  )    No. CV-12-8224-PCT-JAT (LOA)
                                            )
10              Petitioner,                 )    **REPORT AND RECOMMENDATION**
                                            )
11  vs.                                     )
                                            )
12                                          )
    Charles L. Ryan, et al.,                )
13                                          )
                Respondents.                )
14                                          )
    _____  )

15

16         This matter is before the Court on Petitioner's *pro se* Amended Petition for Writ of

17  Habeas Corpus, pursuant to 28 U.S.C. § 2254, in which Petitioner challenges his criminal

    convictions in Apache County Superior Court, State of Arizona, Case No. CR-2005-004.

18  (Doc. 6) Respondents have filed an Answer to Petition for Writ of Habeas Corpus and

19  Petitioner has filed a Reply. (Docs. 19, 32) As explained below, the undersigned Magistrate

20  Judge recommends the Amended Petition be denied.

21  **I. Background**

22        **A. Factual Summary**

23        The Arizona Court of Appeals summarized the facts of the case as follows:

24              On December 20, 2004, suspecting his wife, Laverne Steah, was having
        an affair, Steah left his jobsite in Craig, Colorado and drove home to St. Johns,
25      Arizona. At home, Steah discovered Laverne together with another man, B.C.
        A fight ensued between Steah and B.C.
26
                Shortly thereafter, St. Johns Police Officer Aaron Smith responded to
27      a dispatch concerning a knife fight at Steah's home.  Officer Smith testified
        that upon arriving at the scene, he observed Steah kicking and hitting B.C.,
28

who was trying to get up from the ground in the front yard.  Officer Smith stated that Steah was covered in blood from "head to toe" and that B.C. had multiple wounds, including a wound "from the base of his ear . . . [that] was bleeding very profusely."  Officer Smith recalled Steah stating, "I cut him and I stabbed him . . . . I, [sic] had the only knife . . . . I'm not hurt, none of this blood is mine.  It's all his."

B.C. was transported to a hospital and later died while in the emergency room.  Maricopa County medical examiner, Dr. Vladimir Shvarts, opined that the cause of death was "multiple wounds."  According to Dr. Shvarts, B.C. had sustained ten wounds to the head and neck area, including a stab wound by the ear that damaged a major artery, eleven wounds and multiple superficial cuts on other parts of his body, and blunt force injuries.

(Doc. 7 at 33-34)

### B. Indictment, Trial and Sentencing

On January 5, 2005, the State of Arizona filed an Information, charging Petitioner with one count of First Degree Murder, a Class One felony (Count One); one count of Criminal Damage - Domestic Violence, a Class Five felony (Count Two); and one count of Disorderly Conduct - Domestic Violence, a Class One misdemeanor (Count Three). (Doc. 19, Exh. B) Following a jury trial[1] in July 2005, the jury found Petitioner guilty of the lesser-included offense of Second Degree Murder on Count One, and guilty on Counts Two and Three as charged. (Doc. 19, Exh. V)  On November 18, 2005,  the trial court sentenced Petitioner to twenty years in prison for the murder conviction, and concurrent terms of one-and-a-half years for the criminal damage conviction and six months for the disorderly conduct conviction. (Doc. 19, Exh. Y at 260)  Because Petitioner was given credit for 333 days of time served, the trial court found he already completed his sentence for the disorderly conduct conviction. (Doc. 19, Exh. Y at 260, 262)

### C. Direct Review

Petitioner filed a timely Notice of Appeal on November 18, 2005. (Doc. 19, Exh. AA) Through counsel, Petitioner filed an Opening Brief on August 4, 2006, in which he raised two issues. (Doc. 19, Exh. CC)  First, Petitioner claimed the trial court erred when it failed to exclude photographs that were gruesome and cumulative.  Second, Petitioner claimed the

---

[1] The Honorable Donna J. Grimsley presided over Petitioner's trial and sentencing.

trial court erred in failing to grant Petitioner's motion for a mistrial based on testimony from a police witness that Petitioner had previously been in a knife fight. After briefing was completed, the Arizona Court of Appeals issued a Memorandum Decision on February 22, 2007 in which it affirmed Petitioner's convictions and sentences. (Doc. 19, Exh. EE)  A subsequent Petition for Review in the Arizona Supreme Court was summarily denied on August 17, 2007. (Doc. 19, Exh. FF)

### D. State Post-Conviction Proceedings

On September 13, 2007, Petitioner, through counsel, initiated state post-conviction proceedings by filing a Notice of Post-Conviction Relief. (Doc. 19, Exh. GG) Petitioner then filed a Petition for Post-Conviction Relief on February 23, 2009. (Doc. 19, Exh. HH)  In the petition, Petitioner raised five claims of ineffective assistance of trial counsel and three claims of ineffective assistance of appellate counsel. After briefing was completed, the trial court denied the petition, finding "that Defendant has not raised a colorable claim for relief, and therefore is not entitled to a hearing." (Doc. 19, Exh. JJ)  Petitioner then filed a Petition for Review in the Arizona Court of Appeals, which was summarily denied on April  26, 2011. (Doc. 19, Exh. KK, LL)  Petitioner's subsequent *pro se* Petition for Review in the Arizona Supreme Court was summarily denied on November 9, 2011. (Doc. 19, Exh. MM, NN)

### E. Federal Habeas Petition

On November 8, 2012, Petitioner filed a Petition for Writ of Habeas Corpus in this District Court. (Doc. 1)  After the assigned District Judge dismissed the Petition with leave to amend, Petitioner filed his Amended Petition for Writ of Habeas Corpus on February 8, 2013, along with supporting attachments and a Memorandum of Points and Authorities. (Doc. 6, 7 and 11) Petitioner raises eight grounds for relief in the Amended Petition, all alleging ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments. (Doc. 6 at 6-16)  In ground one, Petitioner alleges his trial counsel failed to elicit testimony that, when Petitioner was questioned by police after the incident, he told police he picked up off a table in the house the knife he used to defend himself, which was

essential to his claim of self-defense. In ground two, Petitioner alleges his trial counsel failed to protect his right to a unanimous jury verdict on his claim of self-defense. In ground three, Petitioner alleges his trial counsel failed to seek a jury instruction on the shifting burden of proof for an affirmative defense. In ground four, Petitioner alleges his trial counsel, without Petitioner's consent, entered a stipulation that was false and allowed the prosecution to introduce highly prejudicial expert testimony regarding abusive relationships. In ground five, Petitioner alleges his trial counsel failed to present testimony from available witnesses to refute the stipulation and show Petitioner was not abusive or controlling. In ground six, Petitioner alleges his direct appeal counsel failed to challenge the trial court's decision denying Petitioner's motion to suppress statements he made after he was taken into custody but before he was read *Miranda* warnings. In ground seven, Petitioner alleges his direct appeal counsel failed to raise a claim of prosecutorial misconduct for impeaching Petitioner with an alleged statement that had not previously been disclosed by the prosecution. Lastly, in ground eight, Petitioner alleges his direct appeal counsel failed to challenge the trial court's denial of trial counsel's request for a mistrial when a prosecution witness testified to a prior bad act that the trial court had excluded. For relief, Petitioner requests that the Court set an evidentiary hearing on his claims and grant the Amended Petition. (Doc. 6 at 15)  On June 14, 2013, Respondents filed their Answer and supporting exhibits. (Doc. 19)  Petitioner then filed his Reply on November 18, 2013. (Doc. 32)

**II. Discussion**

    The eight grounds for relief Petitioner raises here in his Amended Petition are the same ineffective assistance of counsel claims Petitioner raised in his State petition for post-conviction relief. Respondents argue in the Answer that the Amended Petition should be denied and dismissed with prejudice because the trial court's resolution of the claims on post-conviction review was not contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent.

    **A. Standard of Review**

    A federal district court's review of a habeas petitioner's claim is constrained by the

standard of review set forth in 28 U.S.C. § 2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act ("AEDPA").[2] The ADEPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). The standard in § 2254(d) is intended to be "difficult to meet." *Harrington v. Richter*, 562 U.S. ___ , 131 S.Ct. 770, 786 (2011). The statute "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state court proceedings," and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id*. (citations omitted). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunction in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

"[W]ith respect to any claim that was adjudicated on the merits in State court proceedings," a federal court "shall not" grant habeas relief unless the State court's decision "was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court," or the decision "was based on an unreasonable determination of the facts" in light of the record before the State court. 28 U.S.C. § 2254(d)(1), (2); *Green v. Fisher*, __ U.S.__, 132 S.Ct. 38, 43 (2011). As discussed above, this is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*) (citation and internal quotation omitted). The petitioner bears the burden of proving the standards for habeas relief have been met. *Id*. at 25. When applying the standards set forth in § 2254(d), a federal court should review the "last reasoned decision" by the state court. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

---

[2] The AEDPA, which was signed into law on April 24, 1996, governs federal habeas petitions filed after the date of its enactment. *See Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997).

1    To determine whether a state court ruling was "contrary to" or involved an

2    "unreasonable application" of federal law, federal courts look exclusively to the holdings of

3    the Supreme Court which existed at the time of the state court's decision. *Cullen v.*

4    *Pinholster*, __ U.S.__, 131 S.Ct. 1388, 1399 (2011). The Ninth Circuit has acknowledged

5    that it cannot reverse a state-court decision merely because that decision conflicts with Ninth

6    Circuit precedent on a federal constitutional issue.  *Brewer v. Hall*, 378 F.3d 952, 957 (9th

7    Cir. 2004); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir.  2003). Even if the State court

8    neither explains its ruling nor cites United States Supreme Court authority, the reviewing

9    federal court must nevertheless examine Supreme Court precedent to determine whether the

10   State court reasonably applied federal law. *Richter*, 131 S.Ct. at 784 (citing *Early v. Packer*,

11   537 U.S. 3, 8 (2003)). Compliance with the habeas statute "does not even require awareness

12   of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court

13   decision contradicts them." *Early*, 537 U.S. at 8; *Richter*, 131 S.Ct. at 784. "Where a state

14   court's decision is unaccompanied by an explanation, the habeas petitioner's burden still

15   must be met by showing there was no reasonable basis for the state to deny relief." *Richter*,

16   131 S.Ct. at 784.

17   Under § 2254(d), a State court's decision is "contrary to" clearly established federal

18   law if it applies a rule of law "that contradicts the governing law set forth in [Supreme Court]

19   cases or if it confronts a set of facts that are materially indistinguishable from a decision of

20   [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court]

21   precedent." *Mitchell v. Esparza*, 540 U.S 12, 15-16 (2003) (citations omitted); *Williams v.*

22   *Taylor*, 529 U.S. 362, 405-406 (2000). A state-court's decision involves an "unreasonable

23   application of" federal law if the court identifies the correct legal rule, but unreasonably

24   applies that rule to the facts of a particular case. *Brown v. Payton*, 544 U.S. 133, 141 (2005);

25   *Williams,* 529 U.S. at 407-408. This standard requires more than merely an incorrect

26   application of federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 665-66 (2004) (stating

27   that "[r]elief is available under § 2254(d)(1) only if the state court's decision is objectively

28   unreasonable."). "A state court's determination that a claim lacks merit precludes federal

1    habeas relief so long as 'fairminded jurists could disagree on the correctness of the state
2    court's decision.'" *Richter*, 131 S.Ct. at 786 (citing *Yarborough*, 541 U.S. at 664).
3    "[E]valuating whether a rule application was unreasonable requires considering the rule's
4    specificity. The more general the rule, the more leeway courts have in reaching outcomes in
5    case-by-case determination." *Id.* (internal quotation marks omitted). The undersigned
6    Magistrate Judge will consider Petitioner's grounds for relief in view of the foregoing
7    standards.

8            **B. Analysis**

9            As noted above, the trial court denied Petitioner's State petition for post-conviction
10   relief after finding "that Defendant has not raised a colorable claim for relief, and therefore
11   is not entitled to a hearing." (Doc. 19, Exh. JJ)  The trial court provided no explanation for
12   its decision and did not separately address each claim of ineffective assistance. The Arizona
13   Court of Appeals and the Arizona Supreme Court each summarily denied review without
14   comment. (Doc. 19, Exh. LL, NN)  The trial court's ruling is, therefore, the "last reasoned
15   decision" to which the habeas standard is applied. *See Avila v. Galaza*, 297 F.3d 911, 918
16   (9th Cir. 2002) (citations omitted). Even though the trial court's brief decision is
17   unaccompanied by an explanation or analysis, Petitioner must still satisfy the habeas standard
18   and show there was no reasonable basis for the State to deny relief. *See Richter*, 131 S.Ct.
19   at 784.

20           **1. Legal Standards for Ineffective Assistance of Counsel**

21           The controlling Supreme Court precedent on claims of ineffective assistance of
22   counsel is *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a convicted
23   defendant must show that counsel's performance was objectively deficient and counsel's
24   deficient performance prejudiced the petitioner. *Id.* at 687. To be deficient, counsel's
25   performance must fall "outside the wide range of professionally competent assistance." *Id.*
26   at 690.  When reviewing counsel's performance, the court engages a strong presumption that
27   counsel rendered adequate assistance and exercised reasonable professional judgment. *Id.* "A
28   fair assessment of attorney performance requires that every effort be made to eliminate the

distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Review of counsel's performance is "extremely limited." *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998), *rev'd on other grounds*, 525 U.S. 141 (1998). Acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Strickland*, 466 U.S. at 689.

In addition to showing counsel's deficient performance, a petitioner must establish that he suffered prejudice as a result of that deficient performance. *Id.* at 691-92. To show prejudice, a petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *Hart v. Gomez*, 174 F.3d 1067, 1069 (9th Cir. 1999); *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998). The prejudice component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). It is not enough to merely show "that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.

A habeas court may proceed directly to the prejudice prong without deciding whether counsel's performance was deficient. *Id*. at 697; *Jackson v. Calderon*, 211 F.3d 1148, 1155 n. 3 (9th Cir. 2000) (citing *Strickland*). The court, however, may not assume prejudice solely from counsel's allegedly deficient performance. *Jackson*, 211 F.3d at 1155.

In the context of a habeas petition, a petitioner must do more than demonstrate to the federal court that the state court applied *Strickland* incorrectly. *Bell*, 535 U.S. at 698-99. Rather, a petitioner must show the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* Because the standards created by *Strickland* and § 2254(d) are both "highly deferential," review under both standards in tandem is even more deferential. *Richter*, 131 S. Ct. at 788 (citations omitted). "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument

1    that counsel satisfied *Strickland's* deferential standard." *Id.*

2        **2. Ground One**

3        Petitioner alleges in ground one that his trial counsel provided ineffective assistance

4    when he failed to elicit a statement Petitioner made while being questioned by the police

5    chief that during the fight with the victim, Petitioner picked up from a table the knife he used

6    to defend himself and stab the victim. Petitioner contends this statement was necessary to

7    prove self-defense given the prosecution's theory that when Petitioner came into the house,

8    he intended to kill the victim and had the knife with him from the beginning.

9        As Respondents argue, however, Petitioner's counsel was able to elicit the statement

10   at issue from the police chief. During cross-examination of the police chief, who questioned

11   Petitioner shortly after the stabbing incident, Petitioner's counsel asked the police chief if

12   Petitioner, in addition to saying that the victim jumped at him, told the police chief he picked

13   up the knife off the table in the living room. (Doc. 19, Exh. R at 1182) The police chief

14   answered, "Yes. That's what Mr. Steah told me." (*Id.*) The prosecutor had tried to keep

15   Petitioner's counsel from eliciting that statement because, pursuant to a motion *in limine*, it

16   had previously been prohibited by the trial court as self-serving hearsay. (Doc. 19, Exh. R

17   at 1173-1178)  The trial court subsequently ruled, however, that Petitioner's counsel could

18   elicit the statement from the police chief, which he did. (*Id.*)  As a result, Petitioner was able

19   to use the statement he made to the police chief shortly after the incident to bolster his claim

20   of self-defense.

21       Petitioner's claim in ground one is, therefore, not supported by the facts in the record.

22   Petitioner's counsel elicited from the police chief the very statement Petitioner claims his

23   counsel failed to present. Likewise, in the Reply, Petitioner continues to operate under the

24   misunderstanding that the statement was never elicited by his trial counsel.[3] Petitioner has

25   ───────────────

26       [3] Petitioner mistakenly argues in the Reply that "[w]hat the defendant was not
     permitted to say — and what trial counsel was not permitted to ask of the defendant or of the
27   police chief — was whether the defendant had told the police that he picked the knife up
     from the table during the fight." (Doc. 32 at 5) Neither of those contentions is true. As
28   discussed above, Petitioner's counsel was permitted to ask the police chief if Petitioner made

failed to present any facts in ground one that demonstrate deficient performance. Thus, he has not shown that the trial court's decision denying this claim on post-conviction review was contrary to, or an unreasonable application of, *Strickland*, or that the decision was based on an unreasonable determination of the facts in light of the record before the trial court. For these reasons, this Magistrate Judge will recommend that ground one be denied.

### 3. Ground Two

Petitioner alleges in ground two that his trial counsel provided ineffective assistance when he failed to protect Petitioner's right to a unanimous jury verdict on his claim of self-defense. He claims counsel failed to request a jury instruction requiring a unanimous verdict on the affirmative defense and failed to inquire after the verdict whether the jury unanimously rejected the defense.

After instructing the jury on first-degree murder and the lesser-included offenses of second-degree murder and manslaughter, the trial court judge instructed the jury on self-defense. (Doc. 19, Exh. T at 1411-1413) The judge first instructed that "[t]he defendant must prove the defense of self-defense by a preponderance of the evidence. Preponderance of the evidence means that the defense of self-defense is more probably true than not." (Doc. 19, Exh. T at 1411) The judge further explained, however, that the "[b]urden of proof with regard to the elements of the charged offense is with the State. The burden of proof is beyond a reasonable doubt as defined in these instructions." (Doc. 19, Exh. T at 1411-1412) At several points in the instructions, the judge explained that the State must prove guilt beyond a reasonable doubt. (Doc. 19, Exh. T at 1403, 1404, 1406, 1410 and 1412) The judge also instructed the jury that "your verdicts do need to be unanimous. That means that all twelve of you must agree upon a verdict." (Doc. 19, Exh. U at 1487)

Petitioner cites several cases in his Reply to argue that a specific unanimity instruction for his affirmative defense was required and that the failure to request one was ineffective assistance. (Doc. 32 at 8-11) None of the cases, however, is a United States Supreme Court

that statement. Additionally, Petitioner testified on direct examination that he told the police chief during questioning that he picked the knife up off the table. (Doc. 19, Exh. S at 1311)

1   case. *See Harrington*, 131 S.Ct. at 785 (to determine whether a state court ruling was

2   "contrary to" or involved an "unreasonable application" of federal law, federal courts look

3   exclusively to the holdings of the Supreme Court)  Indeed, one of the cases cited by

4   Petitioner, *United States v. Southwell*, 432 F.3d 1050, 1054 (9th Cir. 2005), specifically

5   addressed the fact that the United States Supreme Court has never resolved the question of

6   whether an affirmative defense must be unanimously rejected by the jury. Likewise, the

7   Supreme Court has not addressed the more specific question of whether district courts are

8   required to give specific unanimity instructions for affirmative defenses, though the Ninth

9   Circuit has held they are not required in most cases. *See United States v. Nobari*, 574 F.3d

10  1065, 1081 (9th Cir. 2009); *see also United States v. Kim*, 196 F.3d 1079, 1082 (9th Cir.

11  1999) ("In the ordinary case, a general unanimity instruction suffices to instruct the jury that

12  they must be unanimous on whatever specifications form the basis of the guilty verdict.")

13  Thus, there is no "clearly established Federal law, as determined by the United States

14  Supreme Court" on the question of whether failing to request a unanimity instruction for an

15  affirmative defense constitutes ineffective assistance. *See* 28 U.S.C. § 2254(d)(1). Petitioner

16  cannot show here that the trial court's denial of his ineffective-assistance claim on post-

17  conviction review based on his trial counsel's failure to request a unanimity instruction for

18  his affirmative defense was contrary to, or an unreasonable application of, United States

19  Supreme Court precedent.

20      Moreover, Petitioner has not demonstrated that the trial court's denial of this claim

21  was based on an unreasonable determination of the facts in light of the record before the

22  State court. *See* 28 U.S.C. § 2254(d)(2). Based on the instructions that were given, the jurors

23  knew their verdict had to be unanimous. By unanimously finding Petitioner guilty of second-

24  degree murder, the jurors also implicitly indicated that they unanimously found Petitioner

25  did not act in self-defense. There has been nothing presented by Petitioner to show the trial

26  court unreasonably determined the facts.

27      For these reasons, Petitioner has failed to meet the standards for habeas relief on

28  ground two and, as a result, this Magistrate Judge will recommend that ground two be

1   denied.

2        **4. Ground Three**

3        Petitioner alleges in ground three that his trial counsel provided ineffective assistance

4   when he failed to seek a jury instruction on the shifting burden of proof for an affirmative

5   defense. Petitioner explains that "[b]ecause of the shift in burdens of proof associated with

6   an affirmative defense, it was essential to a fair trial that the jury be instructed about the

7   precise burden that the defense was legally required to bear in order to make a prima facie

8   case for self-defense." (Doc. 6 at 8)  Petitioner further argues that "[i]n the absence of such

9   an instruction, the jury was unable to apply the law correctly with regard to the competing

10  standards of proof borne by the State and the defense." (*Id.*)

11       Petitioner appears to be operating under the mistaken impression that there was no

12  instruction provided to the jury regarding who bore the burden of proof on his affirmative

13  defense. As discussed in the previous section, however, the trial judge instructed the jury that

14  "[t]he defendant must prove the defense of self-defense by a preponderance of the evidence.

15  Preponderance of the evidence means that the defense of self-defense is more probably true

16  than not." (Doc. 19, Exh. T at 1411) The judge also instructed that the "[b]urden of proof

17  with regard to the elements of the charged offense is with the State. The burden of proof is

18  beyond a reasonable doubt as defined in these instructions." (Doc. 19, Exh. T at 1411-1412)

19  The judge instructed several other times that the State must prove guilt beyond a reasonable

20  doubt. (Doc. 19, Exh. T at 1403, 1404, 1406, 1410 and 1412)

21       Thus, Petitioner's belief that the jury was not instructed on the burden of proof for his

22  affirmative defense is simply incorrect. The trial court gave a burden of proof instruction for

23  the affirmative defense, and gave several instructions on the higher burden of proof required

24  for the prosecution to prove the elements of the charges. Accordingly, there is no factual

25  basis to find Petitioner's trial counsel failed to seek a jury instruction on the burden of proof

26  for his affirmative defense. This Magistrate Judge will, therefore, recommend that ground

27  three be denied.

28

**5. Ground Four**

Petitioner alleges in ground four that his trial counsel provided ineffective assistance when he, without Petitioner's consent, entered a stipulation that was false and allowed the prosecution to introduce highly prejudicial expert testimony regarding abusive relationships that was otherwise inadmissible. The stipulations at issue were among several read to the jury by the trial court following the close of evidence. (Doc. 19, Exh. T at 1400-1402)  The two that form the basis for Petitioner's claim in ground four read as follows:

> Number ten, the parties stipulate that the defendant Kee Nelson Steah, Sr. and his wife Laverne Steah were involved in an abusive marriage.
>
> Number eleven, the parties further stipulate that the prior stipulation of an abusive marriage provides the foundational requisite for Kathleen Ferraro, Ph.D. to testify on the general characteristic of abusive relationships and its effects.

(Doc. 19, Exh. T at 1401-1402)  Although the record contains no discussion of the reasons the parties entered the stipulations, it is important to note that when the stipulations were read to the jury, nothing in the record indicates Petitioner was unaware of, or opposed to, the stipulations. (Doc. 19, Exh. T at 1400-1402)

As referenced above, when reviewing counsel's performance in the context of an ineffective assistance claim, the court engages a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. *Strickland*, 466 U.S. at 687. Acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Id.* at 689.

After Petitioner provided notice of his intention to present a claim of self-defense, the State filed, on June 14, 2005, a motion *in limine* to allow the introduction of prior bad acts. (Doc. 19, Exh. E)  The State argued such acts were admissible to refute Petitioner's claim of self-defense. (*Id.*) Among the prior acts the State sought to introduce were two alleged assaults by Petitioner against his wife. (*Id.*)  Petitioner had previously filed a motion *in limine* to preclude the State from introducing evidence of five alleged prior acts of violence by Petitioner against his wife, which the trial court granted. (Doc. 19, Exh. F) Based on that favorable ruling, Petitioner filed a motion on June 20, 2005, asking the trial court to preclude

1    the State from presenting expert testimony regarding abusive relationships. (*Id.*)

2          Petitioner responded to the State's motion *in limine*, arguing that no alleged prior acts

3    of violence by Petitioner against his wife should be admitted, and that, absent the foundation

4    established by such acts, expert testimony about abusive relationships should be excluded.

5    (Doc. 19, Exh. G)  The State responded to Petitioner's motion to preclude expert testimony

6    by arguing that if the prior acts of violence the State was seeking to introduce were

7    admissible, the expert testimony had a proper foundation and was likewise admissible.[4] (Doc.

8    19, Exh. H)

9          During a pre-trial motions hearing on June 27, 2005, Petitioner's wife testified that

10   during her twenty-five years of marriage to Petitioner, she had endured physical and

11   emotional abuse. (Doc. 19, Exh. I at 49, 57)  She claimed she had been emotionally abused

12   for the last five years and that there were six or seven incidents of physical abuse during the

13   marriage. (*Id.*)

14         A minute entry pertaining to a June 30, 2005 continuation of the pre-trial motions

15   hearing, reflects that, before a ruling was issued, the State withdrew its motion for the

16   admission of prior bad acts by Petitioner against his wife. (Doc. 19, Exh. J)  Although there

17   is no discussion on the record, it appears Plaintiff's counsel entered the above-referenced

18   stipulations to eliminate the risk of an adverse ruling by the trial court.[5]  Rather than run the

19   risk of the jury hearing about several specific incidents of domestic violence, it appears

20

21         [4] Petitioner's wife was identified by the State as the victim of the Criminal Damage -
     Domestic Violence charge in Count Two of the Information. Pursuant to *State v. Moran*, 151
22   Ariz. 378, 381 (1986), the parties agreed that expert testimony regarding general behavioral
     characteristics of an alleged victim is admissible which, in this case, involved expert
23   testimony regarding abusive relationships. (Doc. 19, Exh. F, H) The dispute was whether
24   specific incidents of alleged domestic abuse were admissible. (*Id.*) If so, the parties appeared
     to agree that such evidence would provide the foundation for the expert testimony. (*Id.*)
25

26         [5] It should be noted that in a previous pre-trial hearing on the prior bad acts motion
     filed by Petitioner and referenced above, the trial court, although it granted the motion to
27   preclude introduction of such acts in the State's case in chief, indicated it may allow the State
28   to present the information "on either cross-examination or for impeachment or rebuttal
     purposes." (Doc. 19, Exh. D at 8)

1    Petitioner's counsel instead agreed to the much more general stipulation that Petitioner and

2    his wife were involved in an "abusive marriage."

3          Presumably as a result of the stipulation, Petitioner's wife did not testify at trial about

4    any specific incidents of domestic violence. (Doc. 19, Exh. M at 479-514, Exh. N at 519-623

5    and Exh. O at 628-684) Similarly, during cross-examination of Petitioner at trial, the

6    prosecutor asked Petitioner no questions about any specific domestic violence incidents.

7    (Doc. 19, Exh. S at 1300-1323, Exh. T at 1348-1379) Moreover, the State's expert on

8    abusive relationships testified only generally about the characteristics of such relationships

9    and about behaviors associated with victims of abusive relationships. (Doc. 19, Exh. P at

10   936-965)  She provided no testimony, however, that tied her general statements about

11   abusive relationships to Petitioner's relationship with his wife. (*Id.*)  Moreover, Petitioner

12   fails to identify any testimony by the expert that he claims was prejudicial.

13         Under these circumstances, this Magistrate Judge cannot conclude the trial court

14   "applied *Strickland* to the facts of [t]his case in an objectively unreasonable manner." *See*

15   *Bell*, 535 U.S. at 698-99. It was reasonable here for the trial court to conclude that the

16   "abusive marriage" stipulation by Petitioner's trial counsel did not rise to the level of

17   ineffective assistance. By stipulating, Petitioner's counsel prevented Petitioner from being

18   cross-examined at length about specific instances of domestic violence against his wife. The

19   trial court could reasonably have concluded that counsel's agreement to stipulate was a sound

20   strategic decision that helped Petitioner by preventing the introduction of highly damaging

21   evidence. Thus, Petitioner has not shown that the trial court's decision denying this claim on

22   post-conviction review was contrary to, or an unreasonable application of, *Strickland*, or that

23   the decision was based on an unreasonable determination of the facts in light of the record

24   before the trial court. For these reasons, this Magistrate Judge will recommend that ground

25   four be denied.

26   **6. Ground Five**

27         Petitioner alleges in ground five that his trial counsel provided ineffective assistance

28   when he failed to present testimony from available witnesses to refute the abusive marriage

1  stipulation and show Petitioner was not abusive or controlling.  Petitioner claims counsel was

2  aware that Petitioner's children would have testified that Petitioner did not abuse their mother

3  and control her. He claims they would have testified that their mother was often controlling

4  and argumentative and Petitioner was more likely to diffuse a hostile situation by leaving

5  rather than engaging in arguments.

6      In the previous section, this Magistrate Judge determined the trial court had a

7  reasonable basis to conclude that trial counsel's decision to enter the "abusive marriage"

8  stipulation did not rise to the level of ineffective assistance, and that the trial court could

9  reasonably have concluded the stipulation was a sound strategic decision that helped

10  Petitioner by preventing the introduction of highly damaging evidence. In light of counsel's

11  decision to enter the stipulation, it would have made no sense for counsel to then call

12  Petitioner's children as witnesses for the purpose of refuting the stipulation. That simply

13  would have opened the door for the prosecution to question Petitioner's wife, and cross-

14  examine Petitioner, about specific instances of domestic violence. Because the primary

15  purpose of the stipulation was to prevent the jury from hearing specific evidence of domestic

16  violence, calling the children to testify to refute the stipulation would have defeated the very

17  purpose for which it was entered.

18      Thus, Petitioner has not shown that the trial court's decision denying this claim on

19  post-conviction review was contrary to, or an unreasonable application of, *Strickland*, or that

20  the decision was based on an unreasonable determination of the facts in light of the record

21  before the trial court. For these reasons, this Magistrate Judge will recommend that ground

22  five be denied.

23      **7. Ground Six**

24      Petitioner alleges in ground six that his direct appeal counsel provided ineffective

25  assistance when she failed to challenge the trial court's decision denying Petitioner's motion

26  to suppress statements he made after he was taken into custody but before he was read

27  *Miranda* warnings.  Petitioner contends his trial counsel had preserved the issue by objecting

28  at trial.

1    In an order filed on May 26, 2005, the trial court ruled on "Defendant's Motion to

2  Suppress certain [sic] Statements." (Doc. 19, Exh. C)  The trial court did not identify specific

3  statements in the order. (*Id.*) For example, the trial court ruled that statements made to the

4  officer when the officer initially arrived at the scene were admissible because Petitioner was

5  not in custody and "the statements were made in response to questions from the officer that

6  the officer was asking to determine the status of the scene and the safety risks to the officer

7  and others." (*Id.*) The trial court further found that Petitioner's statements to the police chief

8  while in the back of the ambulance were admissible because the police chief was asking

9  questions concerning Petitioner's physical well-being, the statements were voluntary, and

10 there was no custodial interrogation. (*Id.*)  Neither Petitioner nor Respondents included a

11 copy of the motion to suppress in the habeas materials submitted to this District Court.

12    Petitioner fails to identify, either in his Amended Petition or his Memorandum of

13 Points and Authorities, the specific statements he is claiming should have been suppressed

14 and, in turn, should have been addressed on direct appeal. Rather, in the Amended Petition,

15 Petitioner refers generally to statements made "after he was in custody but prior to being

16 provided *Miranda* warnings." (Doc. 6 at 11)  Likewise, in the Memorandum of Points and

17 Authorities, Petitioner fails to identify any specific statements he made to law enforcement

18 that he is claiming should have been addressed on appeal after not being suppressed by the

19 trial court. (Doc. 11 at 17)

20    As noted above, the petitioner bears the burden of proving that the high standards for

21 habeas relief have been met. *See Woodford*, 537 U.S. at 25.  Petitioner has not met that

22 burden here. Without knowing the specific statements Petitioner is challenging, this

23 Magistrate Judge has no basis to determine that the trial court's decision denying this claim

24 on post-conviction review was contrary to, or an unreasonable application of, *Strickland*, or

25 that  the decision was based on an unreasonable determination of the facts in light of the

26 record before the trial court. For these reasons, this Magistrate Judge will recommend that

27 ground six be denied.

28

**8. Ground Seven**

Petitioner alleges in ground seven that his direct appeal counsel provided ineffective assistance when she failed to raise a claim of misconduct by the prosecutor for impeaching Petitioner with an alleged statement that had not previously been disclosed, and when she failed to seek appellate review of the trial court's ruling on the issue. Petitioner is referring to the prosecutor's decision to call the police chief as a rebuttal witness after Petitioner testified. During his testimony, Petitioner said he told the police chief that after he and the victim started fighting, he picked up the knife off the table. (Doc. 19, Exh. S at 1311, Exh. T at 1367) On cross-examination, Petitioner denied telling the police chief during the booking process that "I should have kicked his ass instead of pulling the knife." (Doc. 19, Exh. T at 1365-66) Petitioner explained, "I picked up the knife. I didn't pull it." (*Id.*) Thus, Petitioner disputed that he ever said he "pull[ed] the knife." (*Id.*)

On rebuttal, the police chief testified that he reviewed that morning the audio recording of Petitioner's statements during the booking process. (Doc. 19, Exh. T at 1382-1384) He then testified that after a detective who was also present made a statement about eating too much pizza, Petitioner said, "I should have just kicked his ass. I shouldn't have pulled the knife. I should have just kicked his ass." (Doc. 19, Exh. T at 1383) He further testified that the term "pulled the knife" was exactly what was on the audio tape. (Doc. 19, Exh. T at 1384)

Petitioner's trial counsel objected on the ground that the prosecutor was asking the same questions he asked of this witness when he was previously on the stand. (Doc. 19, Exh. T at 1383) The trial court overruled the objection. (*Id.*) Counsel did not object on the basis of non-disclosure or prosecutorial misconduct. (*Id.*) In a subsequent motion for new trial, however, counsel argued the prosecution failed to disclose the statement about "pulling the knife" that the police chief attributed to Petitioner. (Doc. 19, Exh. X at 14-15)[6] Counsel explained that the State provided an audio recording of Petitioner's statements during the

---

[6] Counsel did not argue in the motion that the prosecutor's actions constituted prosecutorial misconduct. (Doc. 19, Exh. X at 12)

1   booking process, including the statement at issue, but the quality of the recording was very

2   poor. (*Id.*) The State also provided a transcript of the recording, and then in the middle of

3   trial, provided an amended transcript annotated by the police chief. (*Id.*)  Counsel argued that

4   the police chief's rebuttal testimony was different than what was in the transcripts. (*Id.*) He

5   argued that the "pulling the knife" statement attributed to Petitioner is not in the transcripts,

6   and that the first mention of the statement was when the police chief testified on rebuttal that

7   he first heard the statement that morning when he reviewed the audio recording. (*Id.*)

8          In denying the motion for new trial, the trial court found the police chief's rebuttal

9   testimony was proper impeachment evidence. (Doc. 19, Exh. X at 23-24)  In addition, the

10   trial court rejected the argument that the police chief's rebuttal testimony, specifically the

11   "pulling the knife" statement, was not properly disclosed. (*Id.*) The trial court found that the

12   audio recordings and transcripts were "troublesome," but everyone knew that going into the

13   trial, and any problems could have been resolved prior to trial. (*Id.*) Further, the trial court

14   found no error on the part of the State. (*Id.*)  Subsequently, on post-conviction review, the

15   trial court rejected Petitioner's claim that his appellate counsel was ineffective when she

16   failed to pursue this issue on direct appeal. (Doc. 19, Exh. JJ)

17          This Magistrate Judge finds no basis to conclude that the trial court's denial of this

18   claim on post-conviction review was objectively unreasonable. It is highly unlikely the

19   Arizona appellate court would have concluded that the trial court erred in its ruling on the

20   police chief's rebuttal testimony, even if appellate counsel had raised it. The trial court

21   properly found that the audio recordings were timely disclosed to Petitioner. If Petitioner

22   disagreed with the police chief's interpretation of the statements on the recording, he could

23   have cross-examined the police chief on that issue. He could have asked that the recording

24   be played for the jurors so they could hear for themselves that the "pulling the knife"

25   statement was, according to Petitioner's counsel, inaudible. He could have questioned the

26   police chief's credibility by pointing out how two previous transcripts of the audio recording

27   contained nothing about Petitioner saying he "pull[ed] the knife."  Petitioner, however, did

28   none of these things at trial and instead simply argued that the statement used to impeach

1    Petitioner was not properly disclosed, even though the audio recording had been disclosed.

2    Under these circumstances, even if appellate counsel had raised on direct review a claim of

3    prosecutorial misconduct and a claim challenging the trial court's ruling on this issue, such

4    claims would likely have failed.

5        For these reasons, the trial court's decision on post-conviction review denying this

6    ineffective assistance of appellate counsel claim was not contrary to, or an unreasonable

7    application of, *Strickland*. Nor was  the decision based on an unreasonable determination of

8    the facts in light of the record before the trial court. Accordingly, this Magistrate Judge will

9    recommend that ground seven be denied.

10       **9. Ground Eight**

11       Lastly, Petitioner contends in ground eight that his direct-appeal counsel provided

12   ineffective assistance when she failed to challenge the trial court's decision to overrule an

13   objection, and subsequently denied a request for a mistrial, after a prosecution witness

14   testified to a prior bad act that the trial court had ruled inadmissible. Petitioner claims his

15   direct-appeal counsel "failed to assert the claim in Petitioner's direct appeal." (Doc. 6 at 13)

16       Pursuant to a pre-trial motion *in limine*, the trial court granted Petitioner's request to

17   preclude the State from introducing evidence of a prior knife fight between Petitioner and his

18   brother in 1982. (Doc. 19, Exh. D at 5-8)  However, during the police chief's testimony in

19   the State's case-in-chief, he explained in response to a question from the prosecutor that

20   when he asked Petitioner's wife what kind of man Petitioner was, she responded that he was

21   a very violent man and that "[t]his is not his first knife fight." (Doc. 19, Exh. R at 1168)

22       Based on that testimony, Petitioner's counsel objected and moved for a mistrial given

23   the trial court's earlier ruling precluding evidence of the prior knife fight with his brother.

24   (Doc. 19, Exh. R at 1168-69)  The trial court denied the oral motion, but did offer to order

25   the testimony stricken. (*Id.*)  Petitioner's counsel declined. (*Id.*)  Petitioner's counsel raised

26   the issue again during a subsequent break in the proceedings. (Doc. 19, Exh. R at 1180)

27   Counsel said he was "deeply concerned about this statement by [the police chief] that

28   [Petitioner's wife] had told him that [Petitioner] had been in a knife fight before." (*Id.*)

1   Counsel argued this was highly prejudicial. (*Id.*) The trial court explained that while it had

2   excluded evidence of the previous knife fight between Petitioner and his brother because it

3   was too remote in time, the statement that the police chief attributed to Petitioner's wife

4   "probably reflects more on her state of mind." (*Id.*) The trial court found there had been

5   much testimony on the wife's state of mind. (*Id.*) As a result, the trial court concluded the

6   statement did not warrant a mistrial. (*Id.* at 1181)

7       Petitioner's counsel again argued the issue in his motion for new trial. (Doc. 19, Exh.

8   X at 13)  The trial court again rejected the argument, finding that the court's ruling cured any

9   error, and concluding it did not give rise to a new trial. (Doc. 19, Exh. X at 24)

10      Petitioner's claim that his appellate counsel failed to raise this issue on direct appeal

11  is wrong. The second main argument in the Opening Brief on direct appeal was that the trial

12  court erred in failing to grant Petitioner's motion for a mistrial regarding the prior bad act

13  evidence. (Doc. 19, Exh. CC at 26-28). Specifically, appellate counsel argued, "In the case

14  at bar, testimony that it was not [Petitioner's] first knife fight left the jury to conclude that

15  [Petitioner] had a habit of engaging in knife fights. This fact almost surely ensured that the

16  jury reached its verdict on an improper basis." (*Id.* at 27-28)

17      The Arizona Court of Appeals then addressed the argument in its Memorandum

18  Decision. (Doc. 19, Exh. EE at 7-11) The Court explained that evidence of Petitioner's

19  involvement in a prior knife fight was not the only evidence of his violent nature before the

20  jury. (*Id.* at 10) The Court further noted:

21          Moreover, as the State contends, and we agree, the statement, "This is not his
            first knife fight," could not be so prejudicial as to tip the scale against
22          [Petitioner] because that statement alone does not suggest [Petitioner] was the
            aggressor in that fight or that [Petitioner] was acting in ways other than self-
23          defense. Additionally, because the jury's verdict was strongly supported by
            other evidence in the record, we cannot say that [the police chief's] erroneous
24          statement so prejudiced [Petitioner] as to require a new trial.

25  (*Id.* at 10-11) (citations omitted)

26      Thus, it is clear from the Opening Brief and the Court of Appeals' Memorandum

27  Decision, that a challenge to the trial court's ruling on Petitioner's request for a mistrial

28  based on the improper reference to a prior knife fight was properly presented, and decided,

- 21 -

on direct review. Consequently, Petitioner has not shown the trial court's denial on post-conviction review of Petitioner's ineffective-assistance-of-appellate-counsel claim for allegedly failing to raise this issue was contrary to, or an unreasonable application of, *Strickland*, or that the decision was based on an unreasonable determination of the facts in light of the record before the trial court. For these reasons, this Magistrate Judge will recommend that ground eight be denied.

### C. Evidentiary Hearing

As noted above, Petitioner has requested an evidentiary hearing on his claims. (Doc. 6 at 15)  However, "[b]ecause a federal court may not independently review the merits of a state court decision without first applying the AEDPA standards, a federal court may not grant an evidentiary hearing without first determining whether the state court's decision was an unreasonable determination of the facts." *Earp v. Ornoski*, 431 F.3d 1158, 1166-1167 (9th Cir. 2005); *see also Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (review under § 2254(d)(1) of whether a state court's decision was contrary to, or an unreasonable application of, established federal law is limited to the record that was before the state court that adjudicated the claim on the merits). As the above analysis demonstrates, this Magistrate Judge has not determined the State courts' decisions on Petitioner's claims were based on an unreasonable determination of the facts. Accordingly, Petitioner is not entitled to an evidentiary hearing.

### D. Conclusion

For the foregoing reasons, Petitioner's eight grounds for relief alleging ineffective assistance of trial and appellate counsel fail to satisfy the standards for habeas relief under 28 U.S.C. §§ 2254(d). Accordingly, the Court will recommend that the Amended Petition be denied.

**IT IS RECOMMENDED** that the Amended Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, doc. 6, be **DENIED**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Amended

1  Petition is justified because Petitioner has not made a substantial showing of the denial of a
2  constitutional right.

3         This recommendation is not an order that is immediately appealable to the Ninth
4  Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of
5  Appellate Procedure, must not be filed until entry of the District Court's judgment. The
6  parties have 14 days from the date of service of a copy of this recommendation within which
7  to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P.
8  6(a), (b), and 72. Thereafter, the parties have 14 days within which to file a response to the
9  objections. Failure to timely file objections to the Magistrate Judge's Report and
10 Recommendation may result in the acceptance of the Report and Recommendation by the
11 district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121
12 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the
13 undersigned Magistrate Judge will be considered a waiver of a party's right to appellate
14 review of the findings of fact in an order of judgment entered pursuant to the Magistrate
15 Judge's recommendation. *See* Fed.R.Civ.P. 72.

16        DATED this 3rd day of June, 2014.

17

18

19                                Lawrence O. Anderson
                                  United States Magistrate Judge

20

21

22

23

24

25

26

27

28