**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Kee Nelson Steah, Sr.,

               Petitioner,

v.

Charles L. Ryan, et al.,

               Respondents.

No. CV-12-8224-PCT-JAT (LOA)

**ORDER**

Pending before the Court is Petitioner's Petition for Writ of Habeas Corpus. The Magistrate Judge to whom this case was assigned issued a Report and Recommendation (R&R) recommending that this Court deny the Petition. Petitioner has filed objections to the R&R. In addition, the Petitioner also requested an evidentiary hearing that the R&R recommends the Court denies.

## I.     Factual Background

As the R&R quoted, the Arizona Court of Appeals summarized the facts of this case as follows:

> On December 20, 2004, suspecting his wife, Laverne Steah, was having an affair, Steah left his jobsite in Craig, Colorado and drove home to St. Johns, Arizona. At home, Steah discovered Laverne together with another man, B.C. A fight ensued between Steah and B.C.
>
> Shortly thereafter, St. Johns Police Officer Aaron Smith responded to a dispatch concerning a knife fight at Steah's home. Officer Smith testified that upon arriving at the scene, he observed Steah kicking and hitting B.C., who was trying to get up from the ground in the front yard. Officer Smith stated that Steah was covered in blood from "head to toe"

and that B.C. had multiple wounds, including a wound "from the base of his ear . .  [that] was bleeding profusely."  Officer Smith recalled Steah stating, "I cut him and stabbed him . . . .  I, [sic] had the only knife . . . .  I'm not hurt, none of this blood is mine.  It's all his."

B.C. was transported to a hospital and later died while in the emergency room.  Maricopa County medical examiner, Dr. Vladimir Shvarts, opined that the cause of death was "multiple wounds."  According to Dr. Schvarts, B.C. had sustained ten wounds to the head and neck area, including a stab wound by the ear that damaged a major artery, eleven wounds and multiple superficial cuts on other parts of his body, and blunt force injuries.

R&R at 1–2.

## II.      Reply by Petitioner to Respondents' Reply

Petitioner submitted a reply to the Respondents' reply to Petitioner's initial objection to the R&R.  (Doc. 44).  While a reply to Respondents' reply is not allowed by the Federal Rules of Civil Procedure ("Rule") 72 and is moot, the Court will consider it regardless.

## III.     Review of Report and Recommendation

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  It is "clear that the district judge must review the magistrate judge's findings and recommendations *de novo if objection is made*, but not otherwise."  *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*) (emphasis in original); *Schmidt v. Johnstone*, 263 F.Supp.2d 1219, 1226 (D.Ariz. 2003) ("Following *Reyna-Tapia*, this Court concludes that *de novo* review of factual and legal issues is required if objections are made, 'but not otherwise.'"); *Klamath Siskiyou Wildlands Ctr. v. U.S. Bureau of Land Mgmt.*, 589 F.3d 1027, 1032 (9th Cir. 2009) (the district court "must review de novo the portions of the [Magistrate Judge's] recommendations to which the parties object.").  District courts are not required to conduct "any review at all . . . *of any issue* that is not the subject of an objection."  *Thomas v. Arn*, 474 U.S. 140, 149 (1985) (emphasis added); *see also* 28 U.S.C. § 636(b)(1) ("the court shall make a *de novo* determination of those portions of the [report and recommendation] to which objection is made.").

The Petition in this case was filed under 28 U.S.C. § 2254 because Petitioner is incarcerated based on a state conviction. With respect to any claims that Petitioner exhausted before the state courts, under 28 U.S.C. §§ 2254(d)(1) and (2) this Court must deny the Petition on those claims unless "a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law"[1] or was based on an unreasonable determination of the facts. *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). This is a "highly differential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citation and internal quotation omitted). The petitioner bears the burden of proving the standards for habeas relief have been met. *Id.* at 25. Further, this Court must presume the correctness of the state court's factual findings regarding a petitioner's claims. 28 U.S.C. § 2254(e)(1); *Ortiz v. Stewart*, 149 F.3d 923, 936 (9th Cir. 1998). Additionally, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

"When applying these standards, the federal court should review the 'last reasoned decision' by a state court . . . ." *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). Accordingly, the summary denial of Petitioner's petition for review by the Arizona Court of Appeals renders the trial court's decision on Petitioner's Petition for Post-Conviction Relief the "last reasoned decision" of the state court, subject to this Court's review. *See Y1st v. Nunnemaker*, 501 U.S. 797, 803-03 (1991) ("later unexplained orders upholding [a] judgment [rejecting a federal claim]" raises a presumption that the reviewing court "looks through" that order to the last reasoned decision).

In his Petition, Petitioner raised one legal theory for habeas relief, ineffective assistance of counsel. However, Petitioner raised eight different factual variations of ineffective assistance of counsel. The Court will review the theory and factual variations

---

[1] Further, in applying "Federal law" the state courts only need to act in accordance with Supreme Court case law. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

on which Petitioner filed an objection *de novo*.

### A.    Legal Standards for Ineffective Assistance of Counsel

The R&R recounts the law governing a claim for ineffective assistance of counsel as follows:

> The controlling Supreme Court precedent on claims of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a convicted defendant must show that counsel's performance was objectively deficient and counsel's deficient performance prejudiced the petitioner.   *Id.* at 687.   To be deficient, counsel's performance must fall "outside the wide range of professionally competent assistance." *Id.* at 690.  When reviewing counsel's performance, the court engages a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment.  *Id.*  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689.  Review of counsel's performance is "extremely limited." *Coleman v. Calderon*, 150 F.3d 1105, 1113 (9th Cir. 1998), *rev'd on other grounds*, 525 U.S. 141 (1998).  Acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Strickland*, 466 U.S. at 689.
>
> In addition to showing counsel's deficient performance, a petitioner must establish that he suffered prejudice as a result of that deficient performance.   *Id.* at 691-92.   To show prejudice, a petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *Hart v. Gomez*, 174 F.3d 1067, 1069 (9th Cir. 1999); *Ortiz v. Stewart*, 149 F.3d 923, 934 (9th Cir. 1998).  The prejudice component "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  It is not enough to merely show "that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.
>
> A habeas court may proceed directly to the prejudice prong without deciding whether counsel's performance was deficient. *Id*. at 697; *Jackson v. Calderon*, 211 F.3d 1148, 1155 n. 3 (9th Cir. 2000) (citing *Strickland*). The court, however, may not assume prejudice solely from counsel's allegedly deficient performance. *Jackson*, 211 F.3d at 1155.
>
> In the context of a habeas petition, a petitioner must do more than demonstrate to the federal court that the state court applied *Strickland*

incorrectly. *Bell*, 535 U.S. at 698-99. Rather, a petitioner must show the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* Because the standards created by *Strickland* and § 2254(d) are both "highly deferential," review under both standards in tandem is even more deferential. *Richter*, 131 S. Ct. at 788 (citations omitted). "[T]he question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

R&R at 7–9.

### B.      Ineffective Assistance of Counsel Claim

As noted above, Petitioner argues only one legal theory: ineffective assistance of counsel. However, Petitioner asserts eight different factual variations upon this single legal theory.

### 1.      Ground One

"Petitioner alleges in ground one that his trial counsel provided ineffective assistance when he failed to elicit a statement Petitioner made while being questioned by the police chief that during the fight with the victim, Petitioner picked up from a table the knife he used to defend himself and stab the victim." R&R at 9. As the R&R states, Petitoner's counsel did in fact elicit a statement from the police chief in regards to the knife. R&R at 9; (Doc. 19. Ex. R at 1182). As the record reflects, Petitioner's trial counsel questioned: "Now, Nelson told you that he picked up the knife, the knife he used off the table in the living room, correct?" (Doc. 19, Ex. R at 1182). The police chief then responded with: "Yes. That's what Mr. Steah told me." (*Id.*). Thus, Petitioner's first ineffective assistance of counsel claim is not supported by the facts in the record.

Petitioner continues to argue in his objection to the R&R that his counsel did not elicit the statement from the police chief and that this undermined Petitioner's self-defense argument. (Doc. 41 at 12–13). This assertion is simply not supported by the record. Therefore, the Court agrees with the R&R that Petitioner has failed to show that the trial court's decision denying this claim on post-conviction relief was contrary to, or an objectively unreasonable application of, *Strickland*, or that the decision was based on

an unreasonable determination of the facts in light of the record before the trial court. Ground one is denied.

### 2.   Ground Two

"Petitioner alleges in ground two that his trial counsel provided ineffective assistance when he failed to protect Petitioner's right to [a] unanimous jury verdict on his claim of self-defense."  R&R at 10.  Petitioner claims that his counsel "failed to request a jury instruction requiring a unanimous verdict on the affirmative defense and failed to inquire after the verdict whether the jury unanimously rejected the defense."  R&R at 10.

Here, the trial court judge instructed the jury as to the Petitioner's burden of proof for self-defense by stating: "[t]he defendant must prove the defense of self-defense by a preponderance of the evidence."  (Doc. 19, Exh. T at 1411).  Furthermore, the trial judge also instructed the jury to the State's burden of proof in regards to the elements of the charged offense by stating: "the burden of proof with regard to the elements of the charged offense is with the state.  The burden of proof is beyond a reasonable doubt as defined in these instructions."  (Doc. 19, Exh. T at 1412).  The trial judge then proceeded to define self-defense and explain what the jury would need to find to conclude that the Petitioner committed the act in self-defense.  (Doc. 19, Exh T at 1412–13).  Finally, the trial judge instructed the jurors that their verdicts "do need to be unanimous."  (Doc. 19, Exh. U at 1487).    The trial judge then explained that this means "all twelve of you must agree upon a verdict."  (*Id.*).

Petitioner cites to a number of cases to support his argument that the trial court should have instructed the jury with a specific unanimity instruction for Petitioner's affirmative defense.  (Doc. 32 at 9–11).  Petitioner then argues that because his trial counsel failed to seek this jury instruction, his counsel provided ineffective assistance. (Doc. 32 at 11).  While some of these cases are indeed Supreme Court cases, *see Williams v. Taylor*, 529 U.S. 362, 402–03 (2000) (whether a state court ruling was contrary to or an unreasonable application of "clearly established" Federal law, is determined only by the Supreme Court of the United States in the context of habeas

cases), other cases cited by Petitioner are not and will not be taken into consideration. (Doc. 32 at 9–11). Looking exclusively at the Supreme Court cases, none of these cases addresses the issue of specific unanimity instruction for an affirmative defense. Furthermore, as stated in *United States v. Southwell*, 432 F.3d 1050, 1054 (9th Cir. 2005), the Supreme Court has not resolved the question of whether a specific unanimity instruction is needed for an affirmative defense. Therefore, there is no clearly established Federal law—as determined by the Supreme Court of the United States—on this question. Petitioner cannot show that the trial court's denial of this ineffective assistance of counsel claim was contrary to, or an unreasonable application of United States Supreme Court precedent.

Additionally, Petitioner has failed to show that the trial court's decision was based on an unreasonable determination of the facts. Based on the instructions that the trial judge gave, the jury knew they had to unanimously convict Petitioner. They also knew the burdens that both the State and Petitioner had to meet regarding the charged offense and the affirmative defense. The jury implicitly indicated that they unanimously rejected Petitioner's self-defense argument by finding Petitioner unanimously guilty. For these reasons, ground two is denied.

### 3.   Ground Three

"Petitioner alleges in ground three that his trial counsel provided ineffective assistance when he failed to seek a jury instruction on the shifting burden of proof for an affirmative defense." R&R at 12. Petitioner further explains that the jury needs to be instructed as to the precise burden that the "defense was legally required to bear in order to make a prima facie case for self-defense. (Doc. 6 at 8). Petitioner seems to be confused as to the jury instruction provided by the trial judge. The trial judge instructed the jury that "[t]he defendant must prove the defense of self-defense by a preponderance of the evidence. Preponderance of the evidence means that the defense of self-defense is more probably true than not." (Doc. 19, Exh. T at 1411). Furthermore, as stated in the above section, the trial judge instructed the jury that "the burden of proof with regard to

1  the elements of the charged offense is with the state.  The burden of proof is beyond a

2  reasonable doubt as defined in these instructions." (*Id.* at 1412).

3        Therefore, Petitioner's belief that there was no jury instruction on the shifting

4  burden of proof for an affirmative defense is not supported by the record.  The trial court

5  instructed the jury as to the burden of proof for Petitioner's affirmative defense and as to

6  the State's higher burden of proof to the charged offense.  Because there is no factual

7  basis behind Petitioner's claim of ineffective assistance of counsel for not seeking a jury

8  instruction on the shifting burden of proof for an affirmative defense, ground three is

9  denied.

10        **4.**     **Ground Four**

11        Petitioner alleges in ground four that his trial counsel provided ineffective

12  assistance of counsel when his counsel "entered into a stipulation without Petitioner's

13  knowledge or consent, that was: a) false and b) allowed the prosecution to introduce

14  highly prejudicial and inflammatory expert testimony that was otherwise inadmissible."

15  (Doc. 6 at 9).  Petitioner further asserts that "[t]he stipulation entered into by defense

16  counsel held that the marriage between Petitioner and his wife was abusive and that he

17  was controlling her." (*Id.*).  The two stipulations at issue in ground four are:

18            Number ten, the parties stipulate that the defendant Kee Nelson
19      Steah, Sr. and his wife Laverne Steah were involved in an abusive
    marriage.

20            Number eleven, the parties further stipulate that the prior stipulation
21      of an abusive marriage provides the foundational requisite necessary for
    Kathleen Ferraro, Ph.D. to testify on the general characteristic of abusive
22      relationships and its effects.

23  (Doc. 19, Exh. T at 1401–02).  There is nothing in the record as to the reasons that parties

24  entered into the stipulations.  Furthermore, there is nothing on the record that indicates

25  Petitioner was unaware of, or opposed to the stipulations.

26        *Strickland* provides that there is a strong presumption that counsel rendered

27  adequate assistance and exercised reasonable professional judgment in the context of an

28  ineffective assistance claim. *Strickland*, 466 U.S. at 687.  Additionally, acts or omissions

that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Id.* at 689.

The timeline of events in this case leading up to the stipulations shown above are informative as to Petitioner's trial counsel's strategy and could prove the soundness of such a strategy. Initially, Petitioner filed a motion *in limine* to stop the State from introducing evidence of five prior acts of violence "alleged to have been directed against [Petitioner] at [Petitioner's wife] . . . ." (Doc. 19, Exh. F). The Court granted the Petitioner's motion *in limine* and then moved to bar admission of trial testimony by the State's expert witness about "battered spouse syndrome." (*Id.*). The State then moved *in limine* to introduce prior acts of the Petitioner on June 14, 2005 in response to Petitioner's introduction of his intention to present a claim of self-defense. (Doc. 19, Exh. E). The State alleged that these prior acts of violence were admissible to refute Petitioner's claim of self-defense. (*Id.*).

In response to the State's motion *in limine* filed on June 14, 2005, Petitioner argued that no alleged prior acts of violence by Petitioner against Petitioner's wife should be admitted. (Doc. 19, Exh. G). The State's response to Petitioner's motion to preclude the State's expert testimony was that the prior acts of violence were admissible and provided a proper foundation for the expert testimony. (Doc. 19, Exh. H). During a pre-trial motions hearing on June 27, 2005, Petitioner's wife testified that she was physically and emotionally abused during their twenty-five years of marriage. (Doc. 19, Exh. I at 49, 57). On a June 30, 2005 continuation of the pre-trial motions hearing, before the Court issued a ruling on the motions, the State withdrew its "404B Motion regarding prior bad acts." (Doc. 19, Exh J).

As stated above under *Strickland*, acts or omissions that might be considered sound trial strategy do not constitute ineffective assistance of counsel. *Strickland*, 466 U.S. at 689. It is plausible to the Court that Petitioner's trial counsel stipulated to the abusive marriage to eliminate the risk of an adverse ruling by the trial court on the State's motion *in limine*. And Petitioner's trial counsel may also have stipulated to the abusive

marriage to eliminate the risk of the jury hearing damaging testimony from Petitioner's wife about several specific incidents of domestic violence.  Petitioner's trial counsel could have agreed to a more general stipulation of an "abusive marriage" rather than risk this damaging testimony.

Further evidence of this potential agreement is that Petitioner's wife did not testify at trial about any specific incidents of domestic violence, (Doc. 19, Exh. M at 479–514, Exh. N at 519–623, Exh. O at 628–684) and the prosecutor, during Petitioner's cross examination, did not ask any specific domestic violence questions.  (Doc. 19, Exh. S at 1300–1323, Exh. T at 1348–1379).  The State's expert witness only testified about general abusive relationships, and not specifically about Petitioner's relationship with his wife.  (Doc. 19, Exh. P at 936–965).

Petitioner argues that the R&R did not properly address whether the trial strategy was sound trial strategy and that "numerous other family members who had lived with Petitioner" would testify that Petitioner's wife was the actual abuser.  (Doc. 41 at 14).  Petitioner then claims that with this testimony, the stipulations at issue cannot reasonably be considered sound trial strategy.  (*Id.*).  However, as shown above, there is a plausible reason as to why Petitioner's trial counsel stipulated to the "abusive marriage."  Therefore, the Court cannot conclude that the trial court applied *Strickland* to the facts in an objectively unreasonable manner in light of this potential strategy.  *Bell*, 535 U.S. at 698-99.  It was reasonable for the trial court to conclude that the stipulations at issue made by Petitioner's trial counsel did not constitute ineffective assistance of counsel.  As stated above, Petitioner's counsel prevented Petitioner's wife from giving damaging testimony about Petitioner's abusive marriage, and prevented Petitioner from being cross examined as to the same.  For these reasons, ground four is denied.

### 5.    Ground Five

Petitioner alleges in ground five that his "trial counsel failed to adduce testimony from available witness[es] refuting the stipulation and other testimony."  (Doc. 6 at 10).  Petitioner further states that Petitioner's children would testify that it was Petitioner's

wife, not Petitioner, who was "controlling and argumentative." (*Id.*).  Furthermore, Petitioner's children would also testify that Petitioner would diffuse hostile situations by leaving. (*Id.*).

As stated in the above section, the Court found that the trial court's decision that trial counsel's decision to stipulate to an "abusive marriage" did not constitute ineffective assistance of counsel.  The Court also found that it was reasonable for the trial court to conclude that the stipulation was sound trial strategy by Petitioner's trial counsel by limiting potentially damaging testimony about Petitioner's abusive marriage.  The primary purpose of the "abusive marriage" stipulation was to prevent the jury from hearing specific evidence of Petitioner's domestic violence against Petitioner's wife. This purpose would be undermined by having Petitioner's children testify to refute the stipulation.  The testimony would then allow the prosecution to cross-examine Petitioner and question Petitioner's wife as to specific evidence of Petitioner's domestic violence against Petitioner's wife.

Therefore, Petitioner has not shown that his trial counsel was objectively deficient. Furthermore, Petitioner has not shown that the trial court's decision "applied *Strickland* to the facts of the case in an objectively unreasonable manner."  *Bell*, 535 U.S. at 698-99. For this reason, ground five is denied.

### 6.     Ground Six

Petitioner alleges that his "[a]ppellate counsel [provided ineffective assistance when she] failed to challenge the trial court's constitutional error, preserved by objection, in failing to sup[p]ress Petitioner's statements that were made after he was in custody but prior to being Mirandized."  (Doc. 6 at 11).     Petitioner further alleges that his trial counsel preserved the issue by objecting at trial. (*Id.*).

The trial court, in an order filed on May 26, 2005, ruled on "Defendant's Motion to Suppress certain Statements."  (Doc. 19, Exh. C).  Within this order the trial court attempted to separate different statements based upon the timeframe. (*Id.*).  The trial court ruled that statements by Petitioner made to the initial arriving officer were

admissible  because the Petitioner "was not in custody at the time and the statements were made in response to questions from the officer" determining the "status of the scene and the safety risks to the officer and others."  (*Id.*).  The trial court also ruled that statements made to the police chief "while [Petitioner] was in the back of the ambulance [were] admissible" because the chief was asking questions related to the Petitioner's well-being and the statements were "clearly voluntary."  (*Id.*).  Finally, the trial court ruled that the only statements not admissible were those made after Petitioner invoked his Miranda rights at the police station, but before Petitioner "clearly withdrew" the invocation of his Miranda rights and "agreed to talk to the officers."  (*Id.*).

Petitioner fails to identify in his Amended Petition, Memorandum of Points and Authorities, and his objection to the R&R, the specific statements he is claiming should have been suppressed and should have then been addressed on direct appeal.  In Petitioner's objection to the R&R, he asserts that "it is the height of absurdity to assert that Petitioner was not in custody immediately" upon the first police officer's arrival at the scene. (Doc. 41 at 16).  The Court interprets this statement as an assertion that none of Petitioner's statements to police were admissible.  Petitioner further supports this statement by asserting that Petitioner was in custody immediately after the initial handcuffing by the arriving officer at the scene and assumedly for the rest of the police's questioning. (Doc. 41 at 17).  Petitioner cites to several Miranda-related Supreme Court cases supporting his assertion that he was in custody for all of the questioning.  (*Id.*).

As noted above, Petitioner bears the burden of proving that the high standards for habeas relief have been met.  *See Woodford*, 537 U.S. at 25.  Petitioner has not met this burden here.  While Petitioner does argue generally that he was in custody, he does not address the different times or situations specifically and how these different circumstances affect his general custody argument.  The trial court ruled that various statements were admissible for a variety of reasons, including that the questioning was not a custodial interrogation, the statements were clearly voluntary, and that the Petitioner withdrew his invocation of his Miranda rights. (Doc. 19, Exh. C).  Without an analysis

tailored to the different times or statements made to police, Petitioner has not shown that the trial court's decision denying his post-conviction relief was contrary to, or an unreasonable application of *Strickland*, or that the decision was based on an unreasonable determination of the facts in light of the record before the trial court.  For these reasons, ground six is denied.

### 7.   Ground Seven

Petitioner alleges in ground seven that his direct appeal counsel provided ineffective assistance when she failed to "assert a claim of prosecutorial misconduct for impeaching the Petitioner with an alleged statement that had not been disclosed by the prosecution" and when she failed to seek "appellate review of the trial court's ruling on the issue."  (Doc. 6 at 12).  Petitioner is referring to a statement made by the police chief stating that Petitioner had told the police chief that he "pulled the knife."  (*Id.*).  Petitioner further asserts that the alleged statement was not found on any recordings or transcripts and was not disclosed by the prosecution.  (*Id.*).

The statement at issue occurred when the police chief testified on rebuttal that he reviewed the audio recording that morning of Petitioner's statements during the booking process.  (Doc. 19, Exh. T at 1381–82).  The police chief then testified that after a detective commented on eating too much pizza, Petitioner stated "I should have just kicked his ass.  I shouldn't have pulled the knife.  I just should have kicked his ass."  (*Id.* at 1383).  The police chief further testified that the above statement by Petitioner was exactly what was on the audio recording.  (*Id.* at 1384).  Before this rebuttal testimony, Petitioner initially testified that he told the police chief that he picked the knife up off the table after he and the victim started fighting.  (Doc. 19, Exh. S at 1311).  Petitioner, on cross-examination, also denied telling the police chief that he "pulled the knife" during the booking process.  (Doc. 19, Exh. T at 1365).  This is where the statement comes under dispute.

Petitioner's trial counsel initially objected on the ground that the prosecutor was asking the same questions he asked when the police chief was previously on the stand.

(Doc. 19, Exh. T at 1383).  The trial court overruled the objection.  (*Id.*).  Petitioner's trial counsel did not object on the basis of non-disclosure or prosecutorial misconduct.  (*Id.*).  On a later motion for a new trial, Petitioner's trial counsel argued that the prosecution failed to disclose this statement about Petitioner pulling the knife instead of picking the knife up off the table.  (Doc. 19, Exh. X at 14–15).  Petitioner's trial counsel explained that the audio recording was of poor quality and that the statement was neither on the initial transcript, nor the police chief's annotated version of the transcript.  (*Id.*).  Petitioner's trial counsel then argued that the first mention of this statement was when the police chief testified that he heard Petitioner state it based off the audio recording the police chief reviewed that morning.  (*Id.*).

The trial court denied the motion for a new trial by finding that the police chief's rebuttal testimony was proper impeachment evidence, and the statement was properly admitted.  (Doc. 19, Exh. X at 23–24).  The trial court also found that the transcripts and recording were "troublesome," but both parties knew that going into trial, and the officers were available before trial to resolve any problems prior to trial.  (*Id.* at 24).  Finally, the trial court found that the state did not err in regards to the statement.  (*Id.*).  Furthermore, the trial court, on post-conviction review, rejected Petitioner's claim that his appellate counsel was ineffective when she did not pursue this issue on direct appeal.  (Doc. 19, Exh. JJ).

The Court finds no basis to conclude that the trial court's denial of this ground on post-conviction relief was an objectively unreasonable application of *Strickland* to the facts of this case.    Therefore it is unlikely that the Arizona Court of Appeals would have concluded that the trial court erred in its ruling on the police chief's rebuttal testimony, even if Petitioner's appellate counsel had raised it.  Counsel is not ineffective for failing to make a futile argument.  *Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir. 1996) (In evaluating counsel's performance, counsel's failure to take action that would have been futile can never be deficient performance.).

Petitioner states in his objection to the R&R that the prosecution must have had

advanced knowledge of the content of the statement because they used the statement to impeach Petitioner.  (Doc. 41 at 18).  Petitioner further argues that this is prosecutorial misconduct and the Magistrate Judge incorrectly concluded that it was highly unlikely Petitioner would have prevailed on direct appeal.  (*Id.*).  While Petitioner disagrees with the Magistrate Judge's conclusion, he fails to argue how the trial court's denial of post-conviction relief was an objectively unreasonable application of *Strickland* to the facts of this case.  *Strickland* requires that Petitioner shows his counsel's performance was objectively deficient, and that this performance prejudiced Petitioner.  *Strickland*, 466 U.S. at 687.  Here, as stated above, at trial both sides knew about the "troublesome" audio recording and the trial judge found that the State did not err in regards to the statement made by the police chief.  Petitioner has not met his burden of showing that his direct appeal counsel's performance was objectively deficient for not seeking review of the issue on appeal.  For these reasons, ground seven is denied.

### 8.   Ground Eight

Petitioner alleges in ground eight that his direct appeal counsel provided ineffective assistance when she "failed to challenge the trial court's denial of trial counsel's objection to the state's introduction of a prior bad act that the trial court had precluded."  (Doc. 6 at 13).  Petitioner further alleges that a statement the police chief, made in regards to a prior knife fight Petitioner was involved in, denied Petitioner a fair trial and was preserved for appellate review.  (*Id.*).

Due to a pre-trial motion *in limine*, the trial court granted Petitioner's request to preclude the State from introducing evidence of a prior knife fight between Petitioner and his brother in 1982.  (Doc. 19, Exh. D at 5–8).  During the police chief's questioning, the prosecution asked the police chief about his initial questioning of Petitioner's wife at the scene of the alleged crime.  (Doc. 19, Exh. R at 1168).  The police chief stated that Petitioner's wife said "he was a very violent man.  This is not his first knife fight."  (*Id.*).  Petitioner's trial counsel promptly objected and moved for a mistrial, which the trial judge denied.  (*Id.* at 1168–69).  The trial court offered to order the testimony stricken,

but Petitioner's trial counsel declined.  (*Id.* at 1169).  Petitioner's trial counsel again raised the issue in the trial judge's chambers that the statement by the police chief was deeply prejudicial and warranted a mistrial.  (*Id.* at 1180).  The trial court clarified its ruling that while it had excluded the evidence of the previous knife fight, the statement that the police chief attributed to Petitioner's wife "probably reflects more on her state of mind."  (*Id.*).  The trial court then found that there had been a lot of testimony on Petitioner's wife's state of mind, and the statement did not warrant a mistrial  (*Id.* at 1180–81).  Petitioner's trial counsel raised this issue for a third time at the end of the trial in another motion for a new trial. (Doc. 19, Exh. X at 13).  The trial court again denied the motion for a new trial, finding that any error was cured by the trial court's ruling.  (*Id.* at 24).

The Arizona Court of Appeals also addressed the argument in their memorandum decision on Petitioner's direct appeal.  (Doc. 19, Exh. EE at 7–11).  The Court of Appeals explained that the statement "could not be so prejudicial as to tip the scale against [Petitioner] because that statement alone does not suggest [Petitioner] was the aggressor in the fight or that [Petitioner] was acting in ways other than self-defense."  (*Id.* at 10). This shows that Petitioner's direct appeal counsel did indeed raise the issue on appeal. Thus, Petitioner has not shown that his direct appeal counsel was objectively deficient, as required under *Strickland*.

Petitioner argues in his objection to the R&R that his direct appeal counsel only argued the "prejudicial effect of the statement, not the trial court's improper basis for denying the trial attorney's objection or the trial court's improper basis for denying the defense motion for mistrial."  (Doc. 41 at 19).  Petitioner also argues that the Arizona Court of Appeals' conclusion that the statement was not significantly prejudicial, "flies in the face of Supreme Court precedent."  (*Id.*).  Neither of these arguments show deficient performance of Petitioner's direct appeal counsel nor prejudice under *Strickland*. Therefore, Petitioner has not shown that the trial court's denial of post-conviction relief was an objectively unreasonable application of *Strickland* to the facts of this case.  For

these reasons, ground eight is denied.

**IV.    Request for Evidentiary Hearing**

Petitioner filed a motion for an evidentiary hearing.  (Doc. 6 at 15).  In order to be entitled to a federal evidentiary hearing, Petitioner needs to show that "(1) he has alleged facts that, if proven, would entitle him to habeas relief, and (2) he did not receive a full and fair opportunity to develop those facts in a state court."  *Williams v. Woodford*, 384 F.3d 567, 586 (9th Cir. 2002).  As shown by the analysis above, Petitioner has not alleged facts that, if true, would entitle him to habeas relief.  Therefore, the Court denies the request for an evidentiary hearing.

**V.    Conclusion**

**IT IS ORDERED** that Petitioner's motion for an evidentiary hearing (Doc. 6 at 15) is denied.

**IT IS FURTHER ORDERED** that the Report and Recommendation is accepted and adopted (Doc. 33), the objections are overruled (Doc. 41), the Petition in this case is denied, with prejudice, and the Clerk of the Court shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that the "Motion for Extension of Time for Filing Reply to Objection to Report and Recommendation" (Doc. 43) is denied. However, the Court will consider Petitioner's reply regardless.

**IT IS FINALLY ORDERED** that pursuant to Rule 11 of the Rules Governing Section 2254 Cases, in the event Petitioner files an appeal, the Court denies issuance of a certificate of appealability because Petitioner has not made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(2).

Dated this 24th day of March, 2015.

James A. Teilborg
Senior United States District Judge